UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DOMINIC ANTHONY ROSATO,

     Plaintiff,

v.                            Case No.  2:24-cv-741-SPC-NPM

LEE DIXON, et al.,

     Defendants.

---

**<u>OPINION AND ORDER</u>**

Before the Court is a motion for summary judgment filed jointly by the Defendants, Lee Dixon, Jon P. Carner, and Donald Sawyer. (Doc. 47). Plaintiff Dominic Anthony Rosato has filed a response in opposition. (Doc. 54). Plaintiff has also filed a motion to compel discovery (Doc. 51) and a motion to appoint counsel. (Doc. 52). For the reasons that follow, the Court will deny both of Plaintiff's pending motions and grant Defendants' motion for summary judgment.

**Background**

Plaintiff Dominic Anthony Rosato is an involuntarily committed resident of the Florida Civil Commitment Center (FCCC) in Arcadia, Florida. The FCCC is not a prison; rather, it houses sexually violent predators in a secure setting. (Doc. 47-1, ¶ 13); *see also Pesci v. Budz*, 730 F.3d 1291, 1292 (11th Cir.

2013).  Thus, residents of the FCCC are detained civilly, not as convicted prisoners.

Rosato filed this action on August 13, 2024.  (Doc. 1).  His latest pleading is his Second Amended Complaint, filed July 11, 2025.  (Doc. 32 ("Complaint")). He raises claims under 42 U.S.C. § 1983, alleging violation of the Free Exercise Clause of the First Amendment. He also raises claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc to 2000cc-5. Rosato has sued three defendants, each in an individual capacity: (1) Lee Dixon, the Chaplain at the FCCC; (2) Jon P. Carner, the FCCC Facility Administrator at the time of relevant events; and (3) Donald Sawyer, who Rosato identifies as "Vice President Operations Contract Administration" (collectively "Defendants").  (Doc. 32 at 2–3, § I(B)).

Rosato claims Defendants are liable for interfering with the practice of his Wiccan faith.  Rosato arrived at the FCCC in October 2016 and says he joined the facility's Wiccan congregation a month or two later.  (Doc. 54-1 at 3, ¶¶ 3, 4).  In April 2023, he gave notice he was converting to Christianity, only to convert back to a "Wiccan Solitary Practitioner" in September 2023, meaning he "requested non-congregational practice."  (*Id.*)  In January 2025, Rosato again converted to Christianity before again converting back to Wiccan Solitary Practitioner in March 2025. (*Id.*)

Even while formally regarded as a Wiccan Solitary Practitioner, Rosato was permitted to, and did, attend gatherings of the Wiccan congregation at the FCCC. (Doc. 47-1, ¶ 5; Doc. 54 at 2, ¶ 12). Those were held on a "grassy knoll which is the designated grounds for pagan worship." (Doc. 32 at 5–6, § IV(D); *see also* Doc. 47-1, ¶¶ 5–6). In May or June 2025, Rosato "became a full regular congressional member." (Doc. 54-1 at 4, ¶ 9). On May 7, 2026, Rosato gave written notice to Dixon that he wished to be recognized as "a regular congregational member for the Wiccan coven." (Doc. 54 at 2, ¶ 11; Doc. 54-1 at 29).

Rosato alleges that the Wiccan faith annually observes eight holy days: the spring and fall equinoxes; the summer and winter solstices; the Wiccan new year, "Samhain" (October 31); and three days known as "Imbolic" (February 1), "Beltane" (May 1), and "Lughnasadh" (August 1). (Doc. 54-1 at 3, ¶ 2; *id.* at 4, ¶ 7; *see also* Doc. 47-2 at 2). Wiccans also annually observe thirteen full moon and thirteen new moon "Esbat" celebrations. (Doc. 54-1 at 3, ¶ 5). Rosato maintains that, before Dixon became Chaplain at the FCCC in October 2022, the Wiccan congregation was allowed to celebrate all eight holy days. (Doc. 54-1 at 3, ¶ 5). But upon his arrival, Dixon announced each religious group at the facility would be allowed to celebrate only four holy days or religious holidays. (*Id.* at 3–4, ¶ 6). Rosato acknowledges, however, that Dixon actually permitted the Wiccan congregation to celebrate five holy days—

the solstices, the equinoxes, and Samhain, but not Imbolic, Beltane, or Lughnasadh. (*Id.* at 3–4, ¶¶ 6, 7). Rosato also claims the Wiccan congregation has not been allowed to conduct Esbat moon celebrations since April 2020, when the FCCC was put on lockdown because of COVID-19. (*Id.* at 4, ¶ 8).

While Rosato alleges Dixon has "not allowed" him or other Wiccans to "observe" or "celebrate" Imbolic, Beltane, Lughnasadh, or the Esbats, it is apparent that Rosato does not mean Dixon has prohibited observance activities generally. Rather, Rosato claims Dixon declined to grant access to Wiccans to celebrate those events *on the grassy knoll*. It is undisputed that Wiccan residents can celebrate all eight days Rosato considers holy. (Doc. 47-1, ¶ 16). Dixon clarifies that as a self-identified "Wiccan Solitary Practitioner," Rosato "is able to observe [the eight days] in a solitary setting in the rec[reation] yard," which is open each night until 11 p.m., and that "a congregational setting is not required." (Doc. 47-1, ¶¶ 16, 17). Dixon similarly claims Rosato "is able to conduct and celebrate Esbat at night in the rec yard … in an individual setting" and "does not have to use the knoll." (*Id.*, ¶ 18). In response, Rosato admits that the Wiccan congregation is permitted to celebrate five of the eight holy days on the knoll, but he claims he could not celebrate the other days in the rec yard because "other residents will break [his] circle when they walk around [the] yard." (Doc. 54 at 3, ¶ 23 and Doc. 54-1 at 5, ¶ 12).

4

The Complaint also alleges Dixon denied "essential … religious items for congregational and personal use." (Doc. 32 at 6, § IV(D)(3)). Dixon broadly denies this. He claims Wiccans are furnished with a copy of the Book of Shadows as their holy book and are authorized to purchase and use various other items approved for individual and congregational ceremonies. (*See* Doc. 47-1, ¶¶ 8–14). In setting policies authorizing religious observances and the use of religious items in the secure setting of the FCCC, Dixon consults a Federal Bureau of Prisons (BOP) manual as a guide. (*See id.*, ¶¶ 8–10, 14–16, 19; Doc. 47-2). Dixon maintains that, as far as he knows, neither Rosato individually nor the Wiccan congregation has been denied any approved religious items. (Doc. 47-1, ¶¶ 8–14, 17, 18).

Rosato has not identified any religious items the FCCC staff has prohibited or prevented him from obtaining or using personally. Nor does he accuse any defendant of intentionally prohibiting or preventing the Wiccan congregation from obtaining or using any required religious items. Instead, Rosato testifies only that on some unspecified number of occasions—most recently the 2025 spring equinox— "Dixon has forgotten to take … religious items like candles, chalices and bosum out of the Wiccan cabinet for holy day ceremonies." (Doc. 54-1 at 5, ¶ 14 (footnote added)).

Rosato's claims against Carner and Sawyer are based on their alleged conduct as supervisory officials at the FCCC. (*See* Doc. 32 at 6, §§ IV(D)(4),

5

(5)).  Carner was the FCCC Facility Administrator at times relevant to Rosato's claims until he left the FCCC in March 2024 to take a position as the Senior Director of Security Operations with the contractor operating the FCCC.  (Doc. 47-3, ¶ 2).  Sawyer was the FCCC Facility Administrator from February 2013 to September 2021.  (Doc. 47-4, ¶ 4).  He then became the Vice President for the contractor operating the FCCC.  (*Id.*, ¶ 5).

Defendants have filed a joint motion for summary judgment.  (Doc. 47). Rosato has filed a response in opposition.  (Doc. 54).  Shortly before filing that response, Rosato filed a motion to compel discovery (Doc. 51) and a motion for appointment of counsel.  (Doc. 52).  The Court addresses Rosato's two motions and then Defendants' motion for summary judgment.

### Plaintiff's Motion to Compel Discovery

The Clerk docketed Rosato's motion to compel on May 1, 2026, but Rosato indicates he mailed it to the Court on April 25, 2026. The motion seeks an order requiring Defendants Dixon and Carner to produce copies of (1) all policies and procedures regarding the use of the grassy knoll for religious worship and (2) all sign-in sheets from Esbat moon ceremonies of the Wiccan congregation from 2017, 2018, and 2019.  Rosato alleges he served a request for production of such documents on February 16, 2026, but he never received the documents.

Fed. R. Civ. P. 37(a) authorizes a motion to compel discovery, including where a party fails to comply with a request for production of documents under

6

Fed. R. Civ. P. 34.  However, the Court ordered that all discovery, including the filing of any discovery-related motions, was to be completed by March 11, 2026.  (Doc. 46; Doc. 36, ¶ 1).  Assuming Rosato's motion is deemed filed when he mailed or presented it to FCCC authorities for mailing, *see Houston v. Lack*, 487 U.S. 266 (1988), the motion was filed more than a month after that discovery deadline.  Rosato offers no good cause for his delay.  Accordingly, the motion is untimely.

The discovery request underlying the motion to compel was also untimely.  The Court's scheduling order requires each party to "timely serve all further discovery requests so the other side may respond before the deadline."  (Doc. 36, ¶ 1).  A party is afforded 30 days to respond to a request for production. Fed. R. Civ. P. 34(b)(2)(A).  Rosato alleges he served his request on February 16, 2026.  That was less than 30 days before the discovery deadline expired on March 11, 2026.

The Court may defer consideration of a motion for summary judgment, and potentially authorize discovery if the non-moving party shows by affidavit or declaration that it is unable to present facts necessary to support its opposition to the motion.  Fed. R. Civ. P. 56(d).  However, Rosato has not submitted such an affidavit or declaration.  Not only were Rosato's discovery request and motion to compel untimely, the Court finds the documents Rosato

seeks are not necessary to support his opposition to summary judgment. Rosato's motion to compel discovery (Doc. 51) is denied.

## Plaintiff's Motion to Appoint Counsel

On May 6, 2026, Rosato moved the Court to appoint him an attorney. (Doc. 52). In civil cases, there is no constitutional right to appointed counsel. *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999). Federal courts may request an attorney to represent a party unable to afford counsel. 28 U.S.C. § 1915(e)(1). However, courts should only exercise their discretion to appoint counsel when a case presents exceptional circumstances—where the facts or legal issues are so complex that a trained attorney is needed. *Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993). The key inquiry is whether the *pro se* litigant can present the core of his case to the court. *Id.* Simply needing help is not enough. *See Bass*, 170 F.3d at 1320.

Rosato has not shown exceptional circumstances warranting the appointment of counsel. His claims asserting a right to religious exercise and accommodation are straightforward. The record shows he has been able to litigate this case, having filed multiple pleadings and motions, conducted discovery, and responded to various motions by Defendants, including their pending motion for summary judgment. The Court's files also show Rosato has filed and litigated numerous prior cases without the aid of counsel. Rosato's motion for appointment of counsel (Doc. 52) is denied.

## Defendants' Motion for Summary Judgment

A. <u>Legal Standard</u>

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden falls on the movant, who must identify the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To defeat summary judgment, the non-movant must "go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material facts exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences drawn from it in the light most favorable to the non-movant. *See Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006). But "[a] court need not permit a case to go to a jury...when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.' " *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996). If the moving party demonstrates entitlement to judgment as a matter of law, the non-moving party must establish each

9

essential element of that party's case. *Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 524 (11th Cir. 1994).

B. <u>Discussion</u>

Rosato asserts claims under the RLUIPA. He also asserts claims under 42 U.S.C. § 1983, based upon alleged violation of the Free Exercise Clause of the First Amendment. To establish a claim under the RLUIPA, a plaintiff must show "that a government rule, regulation, practice, or policy substantially burdens his exercise of religion." *Dorman v. Aronofsky*, 36 F.4th 1306, 1313 (11th Cir. 2022). The Eleventh Circuit has "held that a substantial burden is more than an inconvenience and is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly." *Id.* (cleaned up). For example, "a substantial burden can tend to force adherents to forego religious precepts or mandate religious conduct." *Id.* (cleaned up). Once the plaintiff makes a prima facie showing of a substantial burden, the defendant must prove the challenged regulation is the least restrictive means of furthering a compelling governmental interest. *Smith v. Owens*, 848 F.3d 975, 979 (11th Cir. 2017).

To state a § 1983 claim, a plaintiff must allege (1) the defendant deprived him of a right secured under the Constitution or federal law, and (2) the deprivation occurred under color of state law. *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (citing *Arrington v. Cobb Cty.*, 139 F.3d 865, 872

(11th Cir. 1998)).   In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation.  *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1059 (11th Cir. 2001).

"Though the government may not dictate what an individual can believe, it may [constitutionally] enact neutral and generally applicable laws that incidentally burden religious conduct and exercise." *Dorman*, 36 F.4th at 1312 (citing *Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 878 (1990). "So long as the restriction or prohibition of religious conduct or exercise is not 'the object' of the regulation 'but merely the incidental effect of a generally applicable and otherwise valid provision, the First Amendment has not been offended.' " *Id.* (quoting *Smith*, 494 U.S. at 878).  When an FCCC regulation impinges on residents' constitutional rights, the regulation will be deemed valid if it is reasonably related "to legitimate interests in institutional order, safety, and security and in the rehabilitation and treatment of civil detainees, but it may not justify a restraint on detainees' constitutional rights for reasons related to punitive conditions of confinement." *Pesci*, 730 F.3d at 1298.   Because the RLUIPA provides greater protection than the First Amendment, if a claim fails under the RLUIPA, it also necessarily fails under the First Amendment.  *Dorman*, 36 F.4th at 1313.

Rosato's first theory is that Defendants are liable based on Dixon' reliance on the BOP manual in setting FCCC policy. (*See* Doc. 32 at 5, § IV(D)(1)).  Rosato emphasizes that the BOP manual is designed for use in federal prisons, but the FCCC is not a prison and FCCC residents are not prisoners.  He suggests following the BOP manual could unlawfully restrict religious exercise by FCCC residents. But Dixon merely uses the BOP manual as a reference to assist in evaluating what religious practices and items to authorize in the FCCC as a secure facility.  Rosato cannot prevail under the RLUIPA or the First Amendment based solely on Dixon's use of the BOP manual.  Rather, Rosato must establish that Dixon or another defendant caused a substantive violation of Rosato's statutory or constitutional rights, whether by following the BOP manual or otherwise.

Rosato's second theory is that Defendants violated his rights by not allowing him to celebrate three of the eight Wiccan annual holy days[1] (Imbolic,

---

[1] Rosato refers to eight Wiccan "holy days."  (Doc. 54-1 at 3-4, ¶¶ 2, 5, 6, 7).  Defendants claim "Wicca does not observe any holy days."  (Doc. 47 at 5, ¶ 22).  Defendants highlight that the BOP manual states, "Wicca has no holy days of work prescription" and instead lists these eight days as "Required Occasional Observances," explaining they are "Sabbats celebrated in the Sacred Wheel of the Year." (Doc. 47-2 at 2, §§ C, D). However, RLUIPA defines "religion" to include "all aspects of religious observance and practice, as well as belief."  42 U.S.C. § 2000e(j). To qualify as a "bona fide" religious belief, the belief must be "sincerely held" and "in the [believer's] own scheme of things, religious." *United States v. Seeger*, 380 U.S. 163, 185 (1965). There is no dispute that Wiccans widely recognize these eight days as religiously important. Rosato's assertion that his faith sincerely calls him to observe and celebrate them is enough to support this element of his claim at summary judgment. *See Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 458 (6th Cir. 2019) (record supported that prisoner's sincere Wiccan faith motivated his desire for Esbat celebrations).

Beltane, or Lughnasadh) or the Esbat moon celebrations on the grassy knoll. (*See* Doc. 32 at 5–6, § IV(D)(2) ("Dixon is refusing to allow plaintiff to perform moon ceremonies and other various religious ritual's (sic)/observances [w]hich need to be conducted on the grassy knoll which is the designated religious grounds for pagan worship. [Doing so] [v]iolat[es] plaintiff's right to have access to his religious grounds ….")).

Rosato does not claim the grassy knoll itself carries any particular religious significance or has a feature necessary for proper Wiccan worship. *Cf. Newberg v. Wellpath Recovery Sols.*, No. 2:20-CV-646-JLB-NPM, 2024 WL 4212970, at *9 (M.D. Fla. Sept. 17, 2024) (allegations that FCCC officials restricted access to the grassy knoll supported a substantial burden on the religious exercise of residents claiming their Native American religion required use of tobacco during prayer such that they could not "simply pray in their dorm rooms or elsewhere on the FCCC campus as tobacco is not allowed in those areas"). Nor does Rosato dispute that he and other Wiccan residents can celebrate the three other holy days and the Esbats individually in the facility recreation yard.

Indeed, Rosato effectively concedes that he might adequately practice his Wiccan faith by celebrating events on his own in his recreation yard, except that, "other residents will break [his] circle when they walk around [the] yard." (Doc, 54-1 at 5, ¶ 12) (footnote added). However, Rosato offers no specifics

13

regarding that purported obstacle. He does not explain, for example, how much space or solitude he would need for appropriate worship or how the yard cannot accommodate them. While he supposes that other residents walking around the yard "will break his circle" if he were to perform rituals in the yard, he does not testify that residents have done so on prior occasions. What is more, Rosato does not claim that he has ever sought or been refused assistance from FCCC officials to help ensure that other residents observe respect and boundaries during worship activities.

Given Rosato's concession that he could adequately celebrate Wiccan holy days and Esbats in the recreation yard individually and his failure to present sufficient evidence of an actual impediment to doing so, he has not shown that lack of access to the grassy knoll substantially burdened his exercise of religion. *See Asad v. Bush*, 170 F. App'x 668, 671–72 (11th Cir. 2006) (plaintiff failed to state a claim under the RLUIPA where defendant prison officials "did not prohibit inmates from exercising their religion in an alternative location").

Rosato's third and final theory is that Dixon violated his rights by "refusing and denying various religious items for congregational and personal use … essential to properly worship." (Doc. 32 at 6, § IV(D)(3)). However, Dixon testifies that as far as he knows, neither Rosato nor the Wiccan congregation has been denied any requested or necessary religious items.

14

Indeed, Rosato does not identify any religious items he has been denied personally. Nor does he contend that Dixon intentionally or permanently prohibited or prevented the Wiccan congregation from obtaining or using any necessary religious items. Rather, Rosato describes "occasions" —including the 2025 spring equinox—that Dixon "has forgotten to take … religious items like candles, chalices and bosum out of the Wiccan cabinet for holy day ceremonies." (Doc. 54-1 at 5, ¶ 14) (footnote added).

Rosato does not claim he or anyone else reminded Dixon or another FCCC official to retrieve the forgotten items, never mind that such a request was denied. Rosato does not discuss the religious significance or necessity of any particular forgotten item, nor does he assert that the absence of any item prevented a ceremony or worship from proceeding. Under the circumstances, Rosato's testimony is insufficient to establish a substantial burden on his practice of religion. *See Wilkinson v. GEO Grp., Inc.*, 617 F. App'x 915, 918 (11th Cir. 2015) (temporary disruption of a particular religious devotion did not place a substantial burden on religious practice );

Rosato fails to prove that any defendant violated the RLUIPA by substantially burdening his religious practices. And because the RLUIPA provides greater protection than the Free Exercise Clause, Rosato's § 1983 claim necessarily fails as well. Defendants are entitled to summary judgment.

Accordingly, it is now

**ORDERED:**

(1) Plaintiff Dominic Anthony Rosato's motion to compel discovery (Doc. 51) is **DENIED**;

(2) Plaintiff's motion for appointment of counsel (Doc. 52) is **DENIED**;

(3) Defendants' motion for summary judgment (Doc. 47) is **GRANTED**; and

(4) The Clerk is **DIRECTED** to terminate all pending motions and deadlines, enter judgment, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on June 29, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-3
Copies:  All Parties of Record

16